May it please the Court, Verita Hines-Flagg received a two-level increase in her offense level for relocating her fraud scheme to another jurisdiction to avoid, or to evade, law enforcement. The first question is, what did the Sentencing Commission mean when it used the term relocated? Because the term is undefined in the guidelines, we must first look to its ordinary meaning. And its ordinary meaning is to take something and move it from one fixed place to another fixed place, or as it was described in the case of Morris from the Eleventh Circuit, to establish in a new place. That's how they defined relocated. The government in its briefing never addresses this issue. It doesn't provide an alternate definition of relocate other than that provided by the defense or provided by the defense in Morris. Instead, the government focuses on what it thinks the term should cover or really what it wants the guideline to cover rather than dealing with what it actually does cover. Not only does the plain meaning of the term relocate support Hines-Flagg's interpretation, but also the logic and the history of the provision also support it. Really the government wants relocate to be synonymous with travel to another jurisdiction. But relocate means something much more than simply travel. It also means something much more than just a scheme that is multi-jurisdictional in nature. If the commission had wanted this provision to apply in any case where a scheme crossed jurisdictional lines, it could have easily have said so directly. But instead it used relocate. And again, that means taking it from one fixed place to another fixed place. The history of the provision also supports our interpretation. In that history in the telemarketing fraud report to Congress and also the commentary to the provision, it indicates that this was originally aimed at telemarketers who would relocate their fraud scheme once they knew or suspected that law enforcement was closing in. That brings to mind a situation where the people committing the fraud start pulling up stakes. They find out that law enforcement is on their trail. They pull up stakes and move to a new location to evade law enforcement. But that's not at all what we have here. So you're saying their plan to just commit the crimes and to go to different states, since they didn't know about law enforcement, it doesn't qualify. So the fact that they would change different states and do it so they wouldn't be detected by law enforcement, do you think that's a lie? It doesn't for two reasons. One, it's not a relocation because we don't take their base of operation always remained in the Detroit area. They don't move that base of operation. And then secondly, it's not for the purpose of evading law enforcement as well. But of course, that's not in the language of the guideline, for the purpose of evading law enforcement. Is that language in there? It says relocate to evade law enforcement. And when we talk about what does evade mean, it's something different than avoid. When we talk about evade, it means to elude or to run away as opposed to avoid, which means not to have contact in the first place. That's why it's very different to say somebody's evading taxes versus avoiding taxes. Didn't the district judge here make a finding that the travel to different locations was for that very purpose of evading? He says that the scheme relocated to evade. I think it's conclusory. The problem is there's no definition of evade. And if you apply an appropriate definition, which again I think has to mean elude, something other than just not having contact with law enforcement, but rather using the telemarketing fraud report language, once it's known or suspected that law enforcement is on their trail, then moving to another jurisdiction. And that's why I say again with the tax analogy, evading taxes is different than avoiding taxes and evading law enforcement is different than avoiding law enforcement. And so it has to be something I think different than just, I don't want to have contact with them. That would be any criminal enterprise. They don't want to have contact. But I think it's pulling up stakes and relocating in response to a known law enforcement interest in the scheme. And again, here we have a base of operation that never moves from Detroit. And the cases that are cited by the government, none of them take on the issue of what do we really mean by relocate? And it does mean moving from one fixed place to another fixed place. It doesn't mean just travel. It doesn't mean just that the fraud scheme is multi-jurisdictional. And in closing, I guess unless there are questions, I would just, in thinking about why it isn't just travel, I went to Maryland over the holiday to see my in-laws for a week. I would never have termed that I'm relocating to Maryland. I traveled there. I went to a different jurisdiction. But I wasn't relocating. And last spring I had a bank fraud trial in Madison, which is in the Western District where I live in the Eastern District. I would never have said that for that two-week trial, I'm relocating to Madison. And that's what we have here too. There's no relocation. These are temporary trips of short duration. And many activities always take place at the base of operation. Getting the credit reports, planning the trip, which the government acknowledges takes months, renting vehicles, fencing all the merchandise, all these things take place in the Detroit area. And that's why the base of operations was never relocated. And this provision does not apply. And there should be a resentencing. Mr. Albee, what if there is a temporal aspect? In other words, does that ever come into play if there's a significant amount of time between operating in different jurisdictions? I don't know. I guess I can't conceive of where it would apply or where that would make a difference. Well, you and I are in this scheme, such as we have with our defendant here. And we only do it on Thanksgiving. But we move around. Again, I don't think it's enough that there's travel or that the scheme takes place over more than one jurisdiction. If it was that broad, then almost any scheme to defraud that took place by telephone or computer would result in this two-level enhancement. And that's not how it's going to apply. We have some physical movement here. You didn't go to Maryland and get a new license so you could drive under the sued name. No. I mean, because I think that's a temporary trip and it's not a relocation. And that's the same with this scheme here. It's temporary, but there's no relocation. Thank you. Thank you, sir. Good morning again. And may it please the Court, my name is Jonathan Koenig. I appear on behalf of the United States. And we're asking you to affirm in this case. It seems to me that the success of Mr. Albee's argument really depends on splitting the guideline language in half and giving each half the narrowest possible meaning. So in Mr. Albee's view, relocation has to be total and it has to be permanent. That's certainly a natural way that we use relocate when we talk about our careers and our personal lives. I'm relocating to Madison or Chicago. But that ignores, well, and then the second part, to evade detection by law enforcement, he interprets as meaning you have to see the cops in your rearview mirror, practically. It has to be some sort of imminent takedown. I would submit that that's kind of a strained reading of the guidelines. And I would direct the Court to a very critical piece of evidence that Judge Adelman relied upon, and that was Benjamin Hines' statement. You don't work in your backyard. A less polite version of that that I heard growing up was you don't foul your own back doorstep. The travel to other states was part and parcel of this fraud. They did it to avoid detection. They consciously avoided doing transactions where they lived. How did that get you to relocate? The whole scheme was set up to get the goods somewhere else and bring them back. It didn't really matter where they went. It was as though there was a prime market and then that ran out or they were on the brink of detection there so they moved to another market and another market. All along the idea was to go somewhere else to get the goods. Well, that's why I'm urging the Court to read the guideline as a whole. They're moving around to avoid detection by law enforcement. Not just from the hub of the wheel to the spoke in Wisconsin, but along the outer rim from Wisconsin to Ohio and Illinois and I forget where else was involved. So if we only have one spoke, there's no relocation, Mr. Cohn? Well, I guess I would probably be arguing that there was relocation if those were the facts that we had. But if that doesn't satisfy the Court... I appreciate the multiple location argument with two spokes or three spokes. I'm just thinking about the one spoke. Well, and even with respect to the one spoke, they said they wouldn't hit too many stores in one location at any given shop because they didn't want to be detected. So here's what I'm struggling with. How do we distinguish this fraudulent scheme? How do we distinguish a fraudulent scheme that just happens to operate in multiple jurisdictions, which it could be argued that part of why you want to operate in multiple jurisdictions is to avoid detection. I mean, we can kind of infer that or maybe that was just part of the big plan, from a fraudulent scheme that is relocated to evade law enforcement. Well, again, the relocation, the moving around here was part and parcel of the fraud. In the Morris case, my impression... That's what I'm saying. It was part of the whole scheme was to... I mean, it could be... I don't know. Do you remember all of those boiler room cases that operated in everything? You know, they'd operate in various locations. The main office might be in Chicago, but they had satellites elsewhere in other parts. So one could argue that part of the reason you had satellites is you didn't want everything, all your eggs in one basket in Chicago, and you wanted to be in various jurisdictions and avoid detection somehow. I mean, an argument could be made for that. So I'm trying to figure out, so what's the difference between just having a crime, you know, and it's in multiple locations, that's the way the setup is, versus you have relocation to evade law enforcement? I mean, I just... Well, again, I come back to why are you moving around? There might be fraud schemes where you're moving around for different reasons other than avoiding detection. Like, I don't know, let's say you choose Wisconsin because you don't have to show a photo ID when you open a credit card account there. I don't know if that's true or not. Or you choose Illinois for some particular reason. So if that were true, though, part of why you wouldn't want to show your photo is because you could get caught by law enforcement, and that would be evading, too. That's happenstance. You're not relocating to avoid detection. You're just being opportunistic in my... Mr. Koenig, if you want us to read it as a whole, then, would you say every time you operate in multiple jurisdictions, implicitly, you should find that there's an evasion aspect? The decision to... No, it's just the opposite, Your Honor. There might be a fact pattern where you're operating in different jurisdictions not to avoid detection, but for some other reason. That's what I'm getting at. Well, why wouldn't you argue, though, that the very nature of setting up that kind of a scheme always involves relocation? Why wouldn't the government make that decision? Well... I'm not necessarily being critical of it. I'm just offering as a position that it could be taken. If you're asking us to read it as a whole, I guess... Yes. How do you reduce it from reading it as a whole, under my example? You operate in Madison, but your plan is to spend 20% of your criminal activity in Rockford and the other in... Well, again, it would depend on why, Your Honor. Here we have some really solid evidence from the nephew as to why they went to other places to avoid detection. Did they relocate the entire fraud, their residence, their computer and everything, to a different place? No. But the actual transactions, they moved to a different jurisdiction to do the transactions and they did it to avoid detection. It's not clear, and I was going to say earlier about Morris, it's not clear the discussion of the facts in that case is a little bit thin, but it almost reads as though those out-of-jurisdiction trips were happenstance or sort of haphazard and temporary. There wasn't the kind of evidence we have here, you know, you don't work in your backyard. We think Judge Adelman was on very solid ground in applying this enhancement and we would respectfully ask that you affirm it. But when you just look at the plain language of it, for relocating or participating in relocating a fraudulent scheme to another jurisdiction to evade law enforcement, it seems that Congress, I mean, not Congress, but the Commission had in mind that someone who got noticed the police were going to catch them and then they split to another jurisdiction to avoid detection. Well, it's at the very least not clear. I wish we had done a little more dictionary analysis in our brief. If you look at OED online, for example, one of the definitions of evade is avoid. So I don't think that the state trooper has to be in the rear view mirror. Well, no, in the Sentencing Commission, is there any commentary on that definition? I don't believe there is any commentary that sheds light on this guideline, Your Honor, or this part of the guideline. Thank you very much. All right, thank you, Ms. Connolly. Unless there are any further questions, I don't have any further argument. All right. Thank you. Thank you, Ms. Connolly. The case is taken under advisement and the court will stand in recess.